ORIGINAL

# In the United States Court of Federal Claims

No. 12-191 T

Filed: July 22, 2013

FILED

JUL 2 2 2013

U.S. COURT OF
FEDERAL CLAIMS

****************************************

|  |  |
|---|---|
| | * |
| | * |
| GREGORY BLUE, | * |
| | * |
| Plaintiff, *pro se*, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |
| | * |

****************************************

Burden of Proof;
Exclusion Rule, 26 U.S.C. § 72;
Federal Tax Refund, 26 U.S.C. § 7422(a);
Gross Income, 26 U.S.C. § 61(a);
Qualified Pension, 26 U.S.C. § 401;
Taxability of Employees' Trust,
   26 U.S.C. § 402;
Pension Exclusion Ratio;
Presumption of Correctness;
*Pro Se*;
RCFC 9(m)(1) (Tax Refund Claim);
RCFC 26(a)(1)(A)(i) (Required Initial
   Disclosure);
RCFC 56 (Summary Judgment).

**Gregory Blue,** Hempstead, New York, Plaintiff, *pro se*.

**Shelley D. Leonard,** United States Department of Justice, Tax Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND ORDER

**BRADEN,** *Judge*.

## I.    FACTUAL BACKGROUND.[1]

From 1973 until 1998, Gregory L. Blue ("Plaintiff") was employed by King Kullen Grocery Co., Inc. (the "Employer") as an Inventory Control Checker. Gov't S.J. Mot. Ex. 3 at 7. During his employment, Plaintiff was a member of Local 282 of the International Brotherhood of Teamsters ("Union"), that administered a Pension Trust Fund (the "Pension Trust Fund") that required the Employer to make weekly contributions on behalf of Union employees, including

---

[1] The relevant facts discussed herein were derived from: Plaintiff's original March 23, 2012 Complaint ("Compl."); exhibit A attached to Plaintiff's June 7, 2012 Response To Motion For More Definite Statement ("6/7/12 Pl. Resp. Ex. A"); exhibits attached to the Government's August 7, 2012 Motion To Dismiss ("8/7/12 Gov't Mot. Ex. 1-8"); exhibits attached to the Government's May 6, 2013 Motion For Summary Judgment ("Gov't S.J. Mot. Ex. 1-24"); and Plaintiff's May 13, 2013 Response to the Government's May 6, 2013 Motion ("Pl. S.J. Resp.") and exhibit B attached thereto.

Plaintiff. Gov't S.J. Mot. Ex. 11 at 20; *see also* Pl. S.J. Resp. at 1 ("The [P]ension [Trust] [F]und is funded by employer contribution[.]"). Only the Employer was allowed to contribute to the Pension Trust Fund. Gov't S.J. Mot. Ex. 5 ¶ 6. Employer contributions were made according to a predetermined schedule set forth in Section 32 of the collective bargaining agreement between the Employer and the Union. Gov't S.J. Mot. Ex. 11 at 20.[2]

Plaintiff's first 2007 monthly pension payment in the gross amount of $1,613.00 was dated January 3, 2007 and withheld $68.00 in federal income taxes. Gov't S.J. Mot. Ex. 1.

On January 11, 2007, Plaintiff filed an Internal Revenue Service ("IRS") Form W-4P "Withholding Certificate for Pension or Annuity Payments" with the Union. Gov't S.J. Mot. Ex. 5. On Line 1, Plaintiff indicated that he did not want any federal income tax withheld from future pension payments. Gov't S.J. Mot. Ex. 5. The Pension Trust Fund Manager responded, by letter, explaining:

> If not enough tax is withheld from your benefits, you may have to pay estimated taxes during the year, or a tax penalty at the end of the year. Of course, whether you have to pay federal income tax on your benefit payments depends on the total amount of your taxable income.

Gov't S.J. Mot. Ex. 14.

Thereafter, from February 2007 through December 2007, the Pension Trust Fund reported Plaintiff's federal tax withholding as $0.00 per month. Gov't S.J. Mot. Ex. 1. At the conclusion of the 2007 calendar year, however, Plaintiff was provided with IRS Form 1099-R "Distributions from Pensions, Annuities, etc.," that reported on Line 1 that a Gross Pension Distribution was made to Plaintiff in the amount of $19,365.00; specifically, Line 2a stated that $19,365.00 was taxable income. Gov't S.J. Mot. Ex. 3.

On April 15, 2008, Plaintiff filed a Form 1040A "2007 U.S. Individual Income Return" with the IRS. Gov't S.J. Mot. Ex. 12. On Line 12a, Plaintiff reported $19,365.00 in pension payments, for which he claimed $0.00 as taxable on Line 12b. Gov't S.J. Mot. Ex. 12. Plaintiff also did not list any received pension benefits on Line 15. Gov't S.J. Mot. Ex. 12.

On July 27, 2009, the IRS issued a Notice of Assessment to Plaintiff in the amount of $3,049.00 (Gov't S.J. Mot. Ex. 16 at 1, 5), because Plaintiff's employer reported that Plaintiff's pension was taxable income, contrary to Plaintiff's reporting on Line 12b on his 2007 federal income tax return. *Compare* Gov't S.J. Mot. Ex. 2 (Form 1099-R Distributions from Pensions, Annuities, Etc.), *with* Gov't S.J. Mot. Ex. 12 (Plaintiff's Form 1040A).

---

[2] The Pension Trust Fund plan effective at the time of Plaintiff's filing for pension benefits in 1998 was the March 1, 1992 restatement. *See* Gov't S.J. Mot. Ex 8.

Beginning on July 31, 2009, Plaintiff and the IRS exchanged a series of letters regarding the tax assessment due from Plaintiff's 2007 pension payments.[3]

On March 15, 2010, the IRS sent Plaintiff a Notice Of Deficiency that informed Plaintiff of $2,847.00 due on his income tax for 2007. 8/7/12 Gov't. S.J. Mot. Ex. 4. On March 29, 2010, Plaintiff appealed the March 15, 2010 Notice by filing a Form 12203 (Request For Appeals Review). 8/7/12 Gov't. S.J. Mot. Ex. 5. But, on August 16, 2010, Plaintiff paid the assessed taxes, including interest, in the amount of $3,250.00. Gov't S.J. Mot. Ex. 17 at 2.

On October 6, 2010, the IRS sent a Form 5260 letter to Plaintiff explaining that Plaintiff's pension payments met an early distribution exception exempting him from incurring additional taxes or penalties; the letter also stated, "However the [pension] income is taxable." Pl. S.J. Resp. Ex. B at 1. The IRS also provided Plaintiff a Wage and Income Transcript showing the IRS's record of Plaintiff's 2007 pension payments and withholdings. Pl. S.J. Resp. Ex. B at 2.

On September 7, 2011, the IRS's Appeals Team Manager rejected Plaintiff's March 29, 2010 Request For Appeal, because Plaintiff's taxable pension income for tax year 2007 was assessed as $19,356.00, thereby disallowing Plaintiff's $2,847.00 refund claim with interest. 8/7/12 Gov't S.J. Mot. Ex. 6. Plaintiff, however, was informed that "the recovery of any tax, penalties or other moneys for which this disallowance notice is issued," could be challenged in a United States District Court with jurisdiction, or in the United States Court of Federal Claims, within two years. 8/7/12 Gov't S.J. Mot. Ex. 6.

On October 11, 2011, Plaintiff filed a Petition in the United States Tax Court seeking, *inter alia*, a refund of $2,847.00, plus interest paid on the alleged overpayment of his 2007 taxes. Gov't S.J. Mot. Ex. 18 at 1-2 (Plaintiff's Tax Court Petition, *Blue v. Comm'r*, T.C. No. 23118-11S). On March 16, 2012, the United States Tax Court dismissed Plaintiff's October 11, 2011 Petition with respect to the 2007 tax year, because Plaintiff's October 11, 2011 Petition was filed 575 days after the March 15, 2010 Notice and beyond the 90-day limitations period that expired on June 4, 2010. Compl. Ex. A at 1-3 (Order, *Blue v. Comm'r*, T.C. No. 23118-11S (Mar. 16, 2012)).

## II.   PROCEDURAL HISTORY.

On March 23, 2012, Plaintiff filed a Complaint in the United States Court of Federal Claims seeking a refund of $2,847.00 plus interest paid for the alleged overpayment of 2007 taxes. Compl. at 1.

On May 24, 2012, the Government filed a Motion For A More Definite Statement ("5/24/12 Gov't Mot."), asserting that it could not determine whether Plaintiff previously had filed an administrative claim for a federal tax refund. 5/24/12 Gov't Mot. at 1-2. Therein, the Government advised the court that it would move to dismiss the March 23, 2012 Complaint, if

---

[3] A more detailed discussion of the exchange of letters and administrative appeals between the parties is set forth in *Blue v. United States*, 108 Fed. Cl. 61 (2012) (denying the Government's 8/7/12 Motion To Dismiss).

Plaintiff could not produce a formal claim for refund, as required by 26 U.S.C. § 7422(a)[4] and RCFC 9(m)(1).[5]  5/24/12 Gov't Mot. at 1-2.

On June 7, 2012, Plaintiff filed a Response, stating that he filed a federal tax refund claim in the form of the March 29, 2010 Request For Appeal to the IRS Appeals Division and Plaintiff's October 11, 2011 Petition to the United States Tax Court. 6/7/12 Pl. Resp. at 1. On June 15, 2012, the Government filed a Reply stating that neither of these filings satisfied the jurisdictional prerequisite that Plaintiff must file an administrative claim for refund, before the United States Court of Federal Claims has jurisdiction to adjudicate a tax refund claim. 6/15/2012 Gov't Reply at 1-2.

On July 6, 2012, Plaintiff filed a Motion For Summary Judgment, contending that the Government's Reply is without merit, because Plaintiff filed a timely March 29, 2010 Request For Appeal with the IRS Appeals Division and a subsequent October 11, 2011 Petition with the United States Tax Court requesting an adjudication of Plaintiff's refund claim.

On August 7, 2012, the Government filed a Motion To Dismiss And Opposition To Plaintiff's Motion For Summary Judgment ("8/7/12 Gov't Mot. Dismiss").

On December 20, 2012, the court issued a Memorandum Opinion And Order: denying the Government's Motion For A More Definite Statement; denying the Government's Motion To Dismiss; and finding that Plaintiff's Motion For Summary Judgment was premature. *Blue*, 108 Fed. Cl. at 70.

On January 3, 2013, the Government filed an Answer to the March 23, 2012 Complaint.

On February 25, 2013, the Government filed a Motion For Leave To File A Preliminary Status Report.[6]

_____

[4] Section 7422(a) of the Internal Revenue Code provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

[5] United States Court of Federal Claims Rule 9(m)(1) states:

> In pleading a claim for a tax refund, a party must include: (1) a copy of the claim for refund[.]

RCFC 9(m)(1).

On March 11, 2013, the Government served Plaintiff with eight interrogatories and a Request For The Production Of Documents ("Gov't Doc. Req."). On March 14, 2013, Plaintiff submitted responses to Government Interrogatories ("Pl. Interrog. Resp."), but did not produce any documents. On that date, however, Plaintiff filed an Initial Disclosure ("Pl. Discl."), pursuant to RCFC 26(a)(1), providing the names of five IRS employees who Plaintiff believes have relevant information regarding his federal tax account.[7] In addition, Plaintiff advised the Government that he was considering calling an expert witness at trial regarding his employer's contributions. Pl. Discl. at 2.

On May 6, 2013, the Government filed a Motion For Summary Judgment.

On May 13, 2013, Plaintiff filed a Reply that the court deems a Response. Pl. S.J. Resp. at 1. On May 31, 2013, the Government filed a Reply ("5/31/13 Gov't Reply").

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172

---

[6] On March 4, 2013, Plaintiff attempted to file a Motion In Support of Summary Judgment, however, that pleading was returned to the Plaintiff for defects and never re-filed with the court.

[7] RCFC 26(a)(1)(A)(i) provides:

(A) Except as exempted by RCFC 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]

RCFC 26(a)(1)(A)(i).

(Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.  In the parlance of Tucker Act cases, that source must be 'money-mandating.'").

The Tucker Act authorizes the United States Court of Federal Claims to adjudicate tax refund claims if a taxpayer has paid the full assessed federal tax liability and timely filed a refund claim with the IRS stating the grounds for the claim.  *See* 28 U.S.C. § 1491(a); 26 U.S.C. §§ 6511(a), 7422(a); *see also Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full").  If the claim is denied by the IRS and the taxpayer timely files suit, the United States Court of Federal Claims has jurisdiction to adjudicate the tax refund claim.  *See* 26 U.S.C. § 6532(a); *see also* 28 U.S.C. § 1346(a)(1).  This court determined in its previous opinion in this case that the United States Court of Federal Claims has jurisdiction to adjudicate the Plaintiff's claim for a federal tax refund.  *See Blue*, 108 Fed. Cl. at 70.

### B.    Standard Of Review For Pro Se Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers").  It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed."  *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969).  Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures."  *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

### C.    Standard For Decision On A Motion For Summary Judgment.

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law.  *See Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c).  Genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted. . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.").  The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Id.*

The moving party bears the burden on a motion for summary judgment of demonstrating the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding that the moving party must meet its burden "by 'showing' – that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's

case."); *see also* RCFC 56.   Issues of genuine fact, and all reasonable inferences and presumptions, are to be resolved in favor of the nonmoving party. *See Anderson* 477 U.S. at 255; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) ("Respondents correctly note that '[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962))).   Thus, to avoid an entry of summary judgment, the non-moving party must set forth evidence sufficient for a reasonable fact-finder to return a verdict for that party at trial. *See Anderson* 477 U.S. at 250. Evidence that is "merely colorable" or not "significantly probative" may not be sufficient to defeat summary judgment. *Id.* at 249.   The court must "view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.

In a taxpayer suit for refund, the burden is initially placed on the taxpayer to both prove that the IRS Commissioner's assessment was erroneous and to establish the exact amount he is entitled to recover. *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932); *see also United States v. Janis*, 428 U.S. 422, 440 (1976) ("It is not enough . . . to demonstrate that the assessment of the tax for which refund is sought was erroneous in some respects.").   There is a strong presumption that the determinations of the IRS Commissioner are valid, and no weight is given in this proceeding to subsidiary administrative factual findings. *Int'l Paper Co. v. United States*, 36 Fed. Cl. 313, 322 (1996) ("[A] tax refund suit in the Court of Federal Claims 'is a *de novo* proceeding, in which the plaintiff bears the burden of proof' with respect to each and every element of his claim.") (quoting *Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 334 (1993)).   To overcome this strong presumption on summary judgment, the plaintiff must put forth evidence that, when viewed in the light most favorable to the plaintiff, could persuade a reasonable fact-finder that the IRS erred in its assessment. *Lima Surgical Assocs., Inc., Voluntary Employees' Beneficiary Ass'n Plan Trust, Huntington Nat. Bank v. United States*, 944 F.2d 885, 888 (Fed. Cir. 1991) (approving the trial court's consideration, when granting summary judgment, of the taxpayer's burden to overcome the presumption that the determinations of the IRS are correct).   In opposing summary judgment, "more is required than mere assertions of counsel." *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984).   In this case, therefore, Plaintiff must offer evidence—not just his own assertions—that he would be able to establish at trial that the IRS erred.

### D.   Issues Raised By The Government's May 16, 2013 Motion For Summary Judgment.

#### 1.   Whether Plaintiff's 2007 Pension Income Was Subject To Federal Income Tax.

##### a.   The Government's Argument.

The Government argues that Plaintiff's 2007 pension income is subject to federal income tax as gross income, unless it previously was taxed. Gov't S.J. Mot. at 7.   The IRS has recognized that the Pension Trust Fund is a fully qualified employer plan under Section 401(a) of the Internal Revenue Code. Gov't S.J. Mot. at 7.   Section 402 provides that payments distributed from a Section 401 qualified employer plan, "shall be taxable to the distributee, in the taxable year of the distributee in which distributed under section 72." 26 U.S.C. § 402.   Section 72

provides that income received as an annuity is taxable,[8] unless that income is a return of capital, on which federal income taxes previously have been paid.[9] Gov't S.J. Mot. at 8.

The Government adds that Plaintiff mistakenly maintains that he is entitled to an exemption under the "General Rule of exclusion income." Gov't S.J. Mot. at 12. Under this General Rule, the employer's contribution is non-taxable at the time it is made to the Pension Trust Fund, *i.e.*, the exclusion ratio. Gov't S.J. Mot. at 12. Since Plaintiff never contributed to the Fund, the ratio is zero. Gov't S.J. Mot. at 12. In this case, the Union allowed only employers to contribute to the Pension Trust Fund, not employees. Gov't S.J. Mot. at 2-3. Therefore, *ipso facto*, Plaintiff's receipt of 2007 pension income was taxable. 5/31/13 Gov't Reply at 1.

### b.    The Plaintiff's Response.

The March 23, 2012 Complaint alleges that Plaintiff reported pension income of $19,356.00, on line 12a of 2007 IRS Form 1040A and properly claimed a taxable amount of $0.00, on line 12b. Compl. at 1. Although Plaintiff recognizes that pension income generally is taxable, Plaintiff contends that his pension payments qualify for an exclusion under the "401(c) exclusion rule," because they are simply periodic monthly payments. Compl. at 1. The exclusion properly was reported on Line 12b of Plaintiff's IRS Form 1040a. Compl. at 1; *see also* Gov't. S.J. Mot. Ex. 12 (Plaintiff's Form 1040a). In addition, as the October 6, 2010 IRS letter explained: "[The] pension distribution was an early distribution *but met an exception* which means you are not subject to the additional tax or penalty." Pl. S.J. Resp. at 1 (quoting Pl. S.J. Resp. Ex. B at 1 (IRS Form 5260 Letter to Plaintiff) (emphasis added)). In addition, an October 6, 2010 IRS Wage and Income Transcript for tax year 2007 "verif[ies] the exception rule." Pl. S.J. Resp. at 1 (citing Pl. S.J. Resp. Ex. B at 2, indicating "Early Distribution, exception applies (Under age 59 ½)." In light of the periodic nature of these payments, Plaintiff maintains that the pre-tax contributions made by the Employer to the Trust Fund satisfies the "exclusion rule" of 26 U.S.C. § 401, exempting such payments from federal income tax. Compl. at 1; *see also* Pl. S.J. Resp. at 1.

---

[8] Section 72(a)(1) provides:

> (a) Income Inclusion. – (1) Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity[.]

26 U.S.C. § 72(a)(1).

[9] Section 72(b)(1) provides:

> (b) Exclusion Ratio. – (1) Gross income does not include that part of any amount received as an annuity under an annuity . . . which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date).

26 U.S.C. § 72(b)(1).

### c.    The Court's Resolution.

The Pension Trust Fund was qualified as an employer plan under 26 U.S.C. § 401(a). Gov't S.J. Mot. Ex. 6 at 1-2 (1995 IRS Letter to Trust Fund Re: Qualified Plan Determination). As such, all income received by an employee-taxpayer under the Pension Trust Fund, either as a pension or annuity, is included in the beneficiary's gross income and subject to ordinary federal income tax, unless that income previously was taxed or otherwise is exempt. *See* 26 U.S.C. § 61(a)(9), (11).[10]   The amount that may be excluded from reporting gross pension or annuity income is calculated using the "exclusion ratio," as set forth in 26 U.S.C. § 72(b).[11]

The "exclusion ratio" is the amount that a taxpayer has invested in a pension or annuity. But in this case, Plaintiff invested nothing. Gov't S.J. Mot. Ex. 9 at 1 (2012 Restatement of Trust Fund Description) ("The Plan is completely financed by contributions from Contributing Employers and investment income.  You [the employee] pay nothing."); *see also* Pl. Interrog. Resp. at 1 ¶ 6 ("I never made pension payments[.]").  Plaintiff elected, on the January 11, 2007 Form W-4P, to opt out of withholding federal taxes from his monthly payments, but that only affected his monthly withholding, not the federal income tax due. *See Church v. Comm'r*, 810 F.2d 19, 20 (2d Cir. 1987) (finding a failure of an employer to withhold taxes does not lessen the obligation of the employee to pay the income tax); *see also* Gov't S.J. Mot. Ex. 14 (Trust Fund Manager Letter to Plaintiff) ("Withholding is one way for you to pay a portion of your income

---

[10] Section 61(a)(9), (11) provides:

> (c) General Definition. – Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
>
> . . .
>
> (9) Annuities;
>
> . . .
>
> (11) Pensions[.]

26 U.S.C. § 61(a)(9), (11).

[11] Section 72(b) provides:

> Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date).

26 U.S.C. §72(b).

tax[.] [W]hether you have to pay federal income tax on your benefit payments depends on the total amount of your taxable income.").

Unfortunately, Plaintiff mistakenly believes that several IRS documents support the assertion that he qualifies for an exception from paying federal tax on his pension receipts. For example, Plaintiff cites the October 6, 2010 letter IRS Form 5260, which states that, "The 1099-R shows the distribution was an early distribution but met an exception which means you are not subject to *the additional tax* or penalty." Pl. S.J. Resp. Ex. B at 1 (emphasis added). The issue here, however, is not "additional tax" but basic income tax. As such, the next sentence reads, "However the *income is taxable*." Pl. S.J. Resp. Ex. B at 1 (emphasis added). The document properly advises that Plaintiff's early distribution would not be subject to taxation *in excess* of the federal income tax; it does not indicate that the early distribution was tax-free. Likewise, Plaintiff attached an October 6, 2010 IRS Wage and Income Transcript that indicates "Early Distribution, exception applies." Pl. S.J. Resp. Ex. B at 2. Again, this text must be read in light of the critical phrase that follows—"Under age 59 ½." Pl. S.J. Resp. Ex. B at 2. The Pension Trust Fund allows for early distribution where the participant is 52 years of age and has at least ten years of pension credit. Gov't S.J. Mot. Ex. 8 at 15 § 3.07. The IRS defines the "Early Distribution, exception applies" on page R-11 of the 2007 IRS "Instructions for Forms 1099-R and 5498," but makes no provision for tax exemptions for periodic payments made under a "401 exclusion rule." Gov't S.J. Mot. Ex. 13 at 11.

The court is mindful that Plaintiff asserts that testimony from five IRS employees may reveal information favorable to his case. Pl. S.J. Resp. Ex. D at 1. As a matter of law, however, this court is required to review Plaintiff's tax liability *de novo*. *See Cook v. United States*, 46 Fed. Cl. 110, 113 (2000) ("In tax refund suits, factual issues are tried *de novo* in this court, with no weight given to subsidiary factual findings made by the [IRS] in its internal administrative proceedings."); *see also Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655, 658 (1994) ("The opinions, conclusions and reasoning of government officials are not subject to discovery." (quoting *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir. 1974))).

In this case, Plaintiff has not offered any evidence that could be construed by a reasonable fact-finder as supporting the position that he is exempt from federal income tax on his pension payments. For this reason, the court has determined, as it must, that Plaintiff has not established that any genuine issue of fact exists as to whether he was subject to federal income tax on payments received from the Pension Trust Fund.

### 2.    Whether Plaintiff Or His Employer Contributed After-Tax Income To The Trust Fund.

#### a.    The Government's Argument.

The Government also argues that Plaintiff never made after-tax payments to the Trust Fund. Gov't S.J. Mot. at 3; *see* Gov't S.J. Mot. Ex. 3 at 7 ¶ 6 ("Pl. Interrog. Resp.") (Plaintiff stating, "I never made pension payments[.]"); Gov't S.J. Mot. Ex. 21 at 8 ¶ 6 ("Gov't Doc. Req.") (Plaintiff again stating, "I was an employee of King Kullen Food Company; I never made pension payments."). In this case, the Employer did not allow employees, including Plaintiff, to make contributions to the Pension Trust Fund. Gov't S.J. Mot. at 11; *see also* Gov't S.J. Mot.

Ex. 5 at 7 ¶¶ 5, 6 (Assistant Fund Administrator stating, "Mr. Gregory L. Blue never made any contributions to the Local 282 Pension Trust Fund. The Local 282 Trust Fund is funded exclusively through employer contributions.").

The Employer made contributions to the Trust Fund on behalf of Union employees, including Plaintiff. Gov't S.J. Mot. at 11. The Employer's contributions were not paid out of the gross earnings of employees, unlike the payment of Union dues. Gov't S.J. Mot. at 11; *compare* Gov't S.J. Mot. Ex. 5 at 2 ¶ 7 (Assistant Fund Administrator stating, "Employers do not fund their contributions to the Local 282 Pension Trust Fund through salary reductions of their employees."), *and* Gov't S.J. Mot. Ex. 11 at 20 ¶ 32 (Union agreement providing, "[T]he company shall *contribute* ten cents ($.10) per hour to the Local 282 Annuity Trust Fund[.]" (emphasis added)), *with* Gov't S.J. Mot. Ex. 11 at 19 ¶ 28 (Union agreement providing, "The Employer agrees to *deduct from the wage rate* of each employee . . . the sum of $0.20 for each hour worked. Said sum shall constitute . . . Union dues." (emphasis added)). Plaintiff insists that his "pension contribution[s] where pre-tax on a weekly basis [sic]." 6/7/12 Pl. Resp. at 1; *see also* Gov't S.J. Mot. Ex. 10 at 1 (Plaintiff's defective 3/4/13 "Motion In Support Of Summary Judgment," stating, "[T]he taxable amount of defined benefit and annuity plan was pre-tax and paid to Local 282 Pension Trust Fund on a weekly time frame."). But, when Plaintiff was asked if the Employer's contributions to the Pension Trust Fund were included in his personal taxable income, Plaintiff did not reply affirmatively. Gov't S.J. Mot. at 10; *see* Gov't Interrog. at 4 ¶ 7 ("State whether any part of your employer's contributions to the Local 282 pension trust fund were ever included in your personal taxable income[.]"; Pl. Interrog. Resp. at 1 ¶ 7 ("I received a W-2 . . . and file[d] my personal tax with that W-2 from the employer King Kullen Food Company."). Plaintiff was unable to proffer any other evidence when asked to produce documents or communications that show the Employer's contributions were included in his personal taxable income. Gov't S.J. Mot. at 10; *see* Gov't Doc. Req. at 5 ¶ 7; Gov't S.J. Mot. Ex. 21 at 8 ¶ 7 ("Not within my knowledge or source[.]").

Since Plaintiff bears the burden of proof and has been unable to demonstrate that his pension payments are not taxable, the court is required to enter summary judgment in favor of the Government. *See Shimota v. United States,* 21 Cl. Ct. 510, 526-27 (1990) (holding that plaintiffs asserting that retirement fund distribution was not taxable bore burden on summary judgment), *aff'd,* 943 F.2d 1312 (Fed. Cir. 1991).

### b.    The Plaintiff's Response.

Plaintiff responds that the Employer contributed to the Pension Trust Fund through deductions from Plaintiff's hourly wages. Pl. S.J. Resp. at 1 ("The Pension Fund is funded by employer contribution deducted on an hourly rate from employee in this case[.]"). Section 32 of the Agreement between the Employer and the Union shows that the Employer deducted money from Plaintiff's pay.[12] Pl. S.J. Resp. at 1; *see also* Gov't S.J. Mot. Ex. 11 at 20 ¶ 32 ("[T]he company shall contribute ten cents ($.10) per hour to the Local 282 Annuity Trust Fund for

---

[12] Plaintiff's response referred to "Section 20" but placed an asterisk next to Section 32 of page 20 of the agreement. The court believes Plaintiff intended to reference Section 32.

every bargaining unit employee for every hour worked."). Even if Pension payments are taxable, Plaintiff argues he has already paid the tax. Pl. S.J. Resp. at 1.

Plaintiff concludes that under the facts of this case he is entitled to a trial where he may call expert witnesses to testify about the weekly deductions from his paycheck. Pl. S.J. Resp. at 2.

### c.    The Court's Resolution.

The parties agree that Plaintiff never made a contribution to the Pension Trust Fund on his own behalf. Pl. S.J. Resp. at 1. Instead, the Employer made weekly pension contributions on behalf of its employees, including Plaintiff, pursuant to the Union Agreement. Pl. S.J. Resp. at 1. The only evidence in the record that Plaintiff cites as support is Section 32 of the Union Agreement, which provides that the Employer shall contribute to the trust fund on an hourly basis. As the Government correctly points out, the Trust Fund used the word "contribute," as opposed to "deduct," when referring to employee pension compensation. 5/31/13 Gov't Reply at 2. To "contribute" is to "give (money or other aid) for a specified object." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 496 (Phillip Babcock Grove, et al. eds., 2002). Plaintiff's pension was monetary compensation made in addition to hourly wages and annuity contributions as part of Plaintiff's total compensation. While federal income taxes are regularly withheld from hourly wages, pension contributions were not included in calculations of Plaintiff's annual taxable income. Gov't S.J. Mot. Ex. 5 ¶ 8 (Trust Fund Manager stating that employers do not fund their pension contributions through employee salary deductions). Plaintiff has the burden of proof at trial, but is unable to produce any documents that support his position that taxes were previously paid on the pension payments made on his behalf.

As a matter of law, an entry of summary judgment is required under Rule 56 when, upon adequate discovery and motion, the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322; *see also Imperial Tobacco Ltd. v. Phillip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) ("A conclusory statement on the ultimate issue does not create a genuine issue of fact."). When the non-movant will bear the burden at trial, he must provide something more than just a mere assertion to defeat summary judgment. *See Pure Gold*, 739 F.2d at 626-27 ("The non-movant may not rest on its conclusory pleadings but under Rule 56, must set out . . . what specific evidence could be offered at trial."). Plaintiff has been afforded numerous opportunities by this court and the Government to produce documents that could justify his allegations. An essential element of Plaintiff's case is showing that he paid income tax on the amount his employer contributed to the Pension Trust Fund, but Plaintiff has not proffered evidence sufficient to establish the presence of a genuine issue of fact as to whether he made such a payment. Plaintiff either paid the income tax due, or he did not, but he has proffered no evidence that he did. Therefore, as a matter of law, the court must grant the Government's motion for summary judgment. *See Moden*, 404 F.3d at 1342.

## IV.    CONCLUSION.

For the foregoing reasons, the Government's May 6, 2013 Motion For Summary Judgment is granted.  The clerk of court is directed to dismiss the March 23, 2012 Complaint.

**IT IS SO ORDERED.**

_____
SUSAN G. BRADEN
Judge